UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW FERRARA,

Plaintiff,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY and LONG ISLAND RAILROAD

Defendants,

**COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff Matthew Ferrara, by his attorneys, Giles Law Firm LLC, complaining of defendants, alleges:

**PRELIMINARY STATEMENT**

1. This action is brought by plaintiff Matthew Ferrara against defendants Metropolitan Transportation Authority and Long Island Railroad to remedy employment discrimination in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12201, et seq,, the Rehabilitation Act, 29 U.S.C. §701 *et seq.,* the New York State Human Rights Law, N.Y. Exec. Law §290, et seq., and the New York City Human Rights Law, N.Y.C. Admin Code §§8-101, et seq.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over plaintiff's claims under the ADA and the Rehabilitation Act pursuant to 28 U.S.C. §1331.

3. This Court has jurisdiction over plaintiff's claims under the New York State and New York City Human Rights laws under the Court's supplemental jurisdiction pursuant to 28

U.S.C. §1367 because those claims are so closely related to plaintiff's federal claims and are part of the same case or controversy under Article III of the United States Constitution.

4. This Court also has jurisdiction 28 U.S.C. §1332 as plaintiff and defendants are citizens of different states.

5. Plaintiff has exhausted all administrative remedies. Plaintiff filed this complaint within 90 days of receipt of a "right to sue" letter from the United States Equal Employment Opportunity Commission, which plaintiff received on September 4, 2024.

6. Venue is proper within this District pursuant to 28 U.S.C. §1391 because defendant Metropolitan Transportation Authority maintains its principal place of business in, does business in, and has designated an address located in this District for service of process and, accordingly, resides in this District.

**PARTIES**

7. Plaintiff Matthew Ferrara is a resident of the State of Florida.

8. Plaintiff, due to his disability referenced in paragraphs 14 through 16, is a "qualified individual" with a "disability" as those terms are defined in the Americans With Disabilities Act and the Rehabilitation Act, 42 U.S.C. §§12102, 12111, and the New York State Human Rights Law N.Y. Exec Law §292, and the New York City Human Rights Law, Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation authorized pursuant to New York City Administrative Code § 8-102.

9. Defendant Metropolitan Transportation Authority ("MTA") is a public benefit corporation authorized pursuant to Section 1263 of the Public Authorities Law of the State of New York.

10. Defendant Long Island Railroad ("LIRR") is an agency of defendant MTA.

11. Defendants are both an "employer" as defined by the ADA, the NYSHRL, and the NYCHRL in that they employ the requisite number of employees under each of the relevant statutes.

12. Defendants' employment of plaintiff is covered as a "program or activity" as defined in the Rehabilitation Act, 29 U.S.C. §794(b). as defendants receive federal funds for operations and capital repair and improvement from the federal government.

## STATEMENT OF FACTS

13. Plaintiff was employed by defendants from June of 2004 until the involuntary termination of his employment on October 14, 2022. Prior to defendants' termination of plaintiff's employment, plaintiff worked for the LIRR in its Maintenance of Equipment Division as the Deputy General Manager of Shops, Yards, and RSSE projects. Plaintiff's responsibilities included overseeing projects concerning procurement and maintenance of equipment of LIRR facilities.

14. Plaintiff has, since 1996, been diagnosed with Gastroesophageal reflux disease (GERD), commonly known as acid reflux.

15. Plaintiff's GERD substantially limits what he can eat and digest. Symptoms include heartburn, chest pain, nausea, difficulty swallowing, irritable bowel syndrome, and difficulty sleeping. Plaintiff is incapable of belching or vomiting to expel food, liquid, or gas.

16. Plaintiff treats his GERD with multiple prescription medications, including Prevacid and Librax, and as of 2021, Hyoscyamine. Plaintiff's dosages have increased over time to address the increasing severity of his symptoms as he gets older.

17. Since 2013, plaintiff's office was located at an office in defendants' Hillside Train Facility in Hillside, Queens.

18. Starting in March of 2020, plaintiff was instructed to work from home due to the COVID-19 pandemic. During the COVID-19 pandemic, plaintiff worked from home without incident and was able to perform all of his job duties.

19. In 2021, due to increased severity of plaintiff's symptoms from GERD, plaintiff's treating physician increased the dose of his Librax prescription and, in addition, prescribed him Hyoscyamine.

20. Plaintiff's new medication regime caused him to experience side effects from his medication, including dry mouth, drowsiness, blurred vision, and imbalance for several hours after taking his medication.

21. When plaintiff was first prescribed medication to treat his GERD in or around 2011, he disclosed his medication to defendants' medical office. Defendants medical office advised plaintiff that if he experienced any side effects from the medication, he would not be permitted to work on any LIRR property. Defendants put plaintiff out of work for three months until he could report that he had not experienced any side effects.

22. When plaintiff's medication was changed in 2021, he reported the change to MTA/LIRR's medical office, as well as the side effects he was experiencing. Because plaintiff was assigned to work remotely at the time, the medication did not prohibit him from performing his job.

23. Starting in the fall of 2021, defendants began to instruct certain office workers to return to the office.

24. In July of 2021, before workers were required to return to the office, plaintiff spoke with his supervisor Mike Gilson and department head Craig Daly. Plaintiff advised that due to the side effects he was experiencing, defendants would not permit him to work on LIRR

property. Daly advised plaintiff that he should submit a request for reasonable accommodation to continue working remotely. Gilson, however, objected and stated, among other things, that working remotely was "a cop out" and that workers could not perform their work remotely.

25. Plaintiff nevertheless applied for a reasonable accommodation on July 8, 2021.

26. On August 11, 2021, plaintiff's request was granted temporarily. Plaintiff was told he would have to re-apply for the same accommodation by September 10, 2021.

27. Once plaintiff received his accommodation, Gilson regularly began to contact plaintiff with increased frequency, even though plaintiff had been working remotely like all other workers due to the COVID-19 pandemic. Gilson would ask plaintiff "where are you," expecting plaintiff to be physically at work, even though plaintiff had signed in to work remotely. Gilson continued to make comments that remote work was a "cop out" and that if someone worked remotely, their job was not necessary.

28. Based on Gilson's repeated hostility to plaintiff working remotely, plaintiff asked Daly to assign him to a new supervisor.

29. Plaintiff again applied for the same accommodation in September of 2021. On September 16, 2021, plaintiff received a call from Chris Yodice from defendants' Health Services Department. Yodice advised that plaintiff's renewed accommodation had been approved, but that it included a provision that he had to work in person once per week.

30. When plaintiff asked Yodice why he was required to work one day a week in person, Yodice advised plaintiff that the provision was added at the direction of Gilson.

31. Plaintiff spoke with Gilson the same day. Gilson confirmed that he had requested the modification of the accommodation. Gilson also stated that he believed remote work was

only performed by workers whose jobs were not necessary, and that if he could not work on site, that plaintiff should go out on disability.

32. Plaintiff then sent an email to Daly, objecting to Gilson's modification of his accommodation. The next day, Yodice informed plaintiff that plaintiff's original request to work fully remotely would remain in effect. Plaintiff, however, was again required to renew his accommodation in November of 2021.

33. Between August and November of 2021, plaintiff worked fully remotely and fulfilled all his job duties. Defendants never requested that plaintiff work in person. Plaintiff voluntarily worked in person approximately five times during this period of his own accord when he believed it would be more productive and convenient for his co-workers. In each case plaintiff discontinued his medication 24 hours in advance before coming to the facility. In November of 2021, plaintiff was reassigned to work under Eileen Rodriguez, the General Manager for Asset Management, Budget, and Administration.

34. Plaintiff owns a residence in the state of Florida. In November of 2021, plaintiff updated his residential address with defendants. Specifically, plaintiff updated his details with defendants' Business Service Center, which had confirmed his update had been received and approved.

35. Also in November of 2021, plaintiff renewed his request for accommodation. On November 9, 2021, plaintiff received a letter approving his accommodation. Once again, the letter included a provision stating plaintiff was required to report to work in person once per week. The approval also was addressed to plaintiff's New York address, even though plaintiff had changed his residential address to his Florida residence.

36. Plaintiff again spoke with Yodice of the Health Services Department and objected to the modification of his previously approved request. Yodice assured plaintiff that he was not required to report in person and that the letter was just a "cut and paste" from the prior approval. Yodice also confirmed that defendants had plaintiff's Florida address on file as his residential address and that future correspondence would include his Florida address.

37. Between January and May of 2022, plaintiff worked remotely from his Florida residence and fulfilled all of his job duties. During this period plaintiff did work at LIRR facilities on approximately 7 occasions. Plaintiff's supervisor Rodriguez never requested that he work on property; rather plaintiff did so of his own accord when it was more efficient to do so. Because plaintiff requires 24 hours to discontinue his medication before reporting to work, travel arrangements were never a problem, as he lived by two major airports with multiple flights to New York City each day. Plaintiff would discontinue his medication, make travel arrangements that he would pay for himself, and report to work within 24 hours.

38. On May 6, 2022, plaintiff received a letter from Rodriguez threatening him with immediate termination if he did not relocate to his residence in New York and work remotely from that location. Rodriguez's letter acknowledged that defendants' "draft telework policy" permitted remote work from out of state with their supervisor's permission. Rodriguez however refused to give plaintiff such permission, without any explanation.

39. In response to Rodriguez's threat to terminate plaintiff, plaintiff returned to New York, On or about May 25, 2022 plaintiff met with Rodriguez and a human resources representative (who appeared remotely via Microsoft Teams). At this meeting, neither Ms. Rodriguez nor the human resources representative could explain why plaintiff was required to maintain a residence in New York. When plaintiff inquired about the telework policy, neither

Rodriguez nor the human resources representative could give any relevant details of the policy, but that defendants would be publishing such a policy in the near future, and that plaintiff's residence could be addressed at that time.

40. Defendant LIRR published its telework policy on July 18, 2022. Defendant LIRR also held webinar trainings to discuss the policy. The written policy states that LIRR workers are not permitted to telework from foreign countries, but did not prohibit out of state telework. Defendants' trainers at the webinar also confirmed the policy did not prohibit telework from another state. In addition, the policy provides that any restrictions on telework in the policy do not apply to workers who are teleworking due to an accommodation of a disability.

41. Based on the terms of defendants' telework policy, defendants' webinar trainings, and defendants' approval of his request to telework when it had plaintiff's Florida residence as his original address, plaintiff transitioned to teleworking from his Florida residence. As before, Rodriguez never requested that plaintiff work in person.

42. Rodriguez was aware that plaintiff resided in Florida, in the spring of 2022, Rodriguez told plaintiff she was visiting the area for vacation. Plaintiff and Rodriguez discussed visiting plaintiff's residence when she was on vacation.

43. On September 2, 2022, plaintiff advised Rodriguez that he was returning from a vacation and would continue working remotely. In response, Rodriguez asked if his residence was his prior residential address in Holbrook, New York. Plaintiff advised that his residence was no longer in Holbrook.

44. By email dated September 4, 2022, Rodriguez declared that plaintiff was required to work from Holbrook, New York (even though his residential address had been changed and accepted by defendants months earlier). As a justification for demanding that he only work

remotely from New York, Rodriguez stated that plaintiff's "original" accommodation mandated that he work one day a week in person.

45. In response to Rodriguez's email, plaintiff emailed Rodriguez. In his email, plaintiff described his history of seeking a reasonable accommodation for his disability and the denials and modifications of same by his supervisors. Plaintiff advised Rodriguez and Mehm that he believed the continued modification of his accommodation and demand that he work only from New York was harassment due to his disability and request for reasonable accommodation of same.

46. On September 16, 2022, plaintiff received another email from Rodriguez that was also sent by first class mail. Rodriguez threatened to terminate plaintiff's employment and claimed that plaintiff was "insubordinate" if he did not work remotely from a "commutable distance" from the LIRR. Rodriguez never explained what "commutable distance" meant and what rules or guidelines in the LIRR's remote work policy, or any LIRR policy, set forth such a requirement. Rodriguez claimed that even though plaintiff's Florida residence had been on file as his residence with defendants, that was "irrelevant."

47. On September 20, 2022, plaintiff again spoke with Yodice of defendants' Health Services department. Yodice confirmed that plaintiff's accommodation request was effective through the end of the year, that defendants had plaintiff's Florida address on file, and that any subsequent letter approving plaintiff's accommodation request would list his Florida address as the telework site from which plaintiff worked.

48. Due to the threats of termination and modifications of his approved accommodation, plaintiff took medical leave due to stress effective September 20, 2022.

49. On October 11, 2022 plaintiff advised Rodriguez that he would return to work on October 14, 2022. Plaintiff also asked Rodriguez if she needed him to be present for an October 20, 2022 meeting on site, which he was prepared to attend in person if necessary. Rodriguez did not respond to this email.

50. On October 14, 2022, after returning to work, plaintiff attended a Microsoft Teams meeting with Human Resources and Rodriguez and received an email from Human Resources advising him that his employment was terminated for "insubordinate behavior towards Eileen Rodriguez."

51. At no time did plaintiff disobey any lawful directive of Rodriguez. The only actions that could be referred to in the October 14, 2022 termination were his requests that Rodriguez respect his reasonable accommodation without imposing her own additional conditions that were not part of the accommodation.

52. Plaintiff subsequently learned from his treating physician that in September of 2022, defendants' medical office contacted him and discouraged him from not only assisting plaintiff with his accommodation request, but from treating plaintiff entirely.

53. In the conversation with plaintiff's treating physician, defendants' representative was confrontational and repeatedly asked if the physician was competent or able to treat plaintiff when plaintiff lived in Florida. Defendants' medical office repeatedly suggested that plaintiff's physician could only treat plaintiff for his GERD if he resided in New York and had such appointments in person. Plaintiff's physician responded that he was able to treat plaintiff through telemedicine, that plaintiff's accommodation request to work fully remote was reasonable, and that he stood by both his treatment and recommendations. Plaintiff's former treating physician had experienced similar difficulty with defendants' medical office, which engaged in

argumentative and confrontational conversations to discourage the physician from recommending a remote work accommodation.

54. Plaintiff also learned that as of August 2022, defendants removed plaintiff's name plate from his office, indicating that defendants had decided to terminate plaintiff well before any "insubordination" towards Rodriguez.

55. Defendants have allowed several workers, including in the Maintenance of Equipment Division, in office roles to work remotely, whether as an accommodation for disability or simply due to the preference of the worker. This includes workers who have worked in North Carolina, Florida, and the Caribbean island of St. Martin.

56. Defendant MTA's inspector general office previously released a report concerning improper authorization of remote work arrangements in plaintiff's division. Specifically, on August 24, 2020 the inspector general released a report finding that a Managing Engineer in the Maintenance of Equipment Division and his supervisors sought to approve a remote work arrangement under false pretense. Specifically, the report found that the Managing Engineer and his supervisors falsely stated that the Managing Engineer was planning to retire and that defendant was seeking to hire his replacement, and that the Managing Engineer would work month to month from North Carolina until his replacement was found.

57. In fact, the Managing Engineer had worked remotely from out of state since 2018 without authorization, and that when he sought authorization, the Managing Engineer had no intentions of retiring but rather continued to work full time. The report also noted that remote computer access was requested for "after hours and weekends" when in fact the Managing Engineer was working remotely the entire day.

58. Despite this unauthorized arrangement, the Managing Engineer received no punishment or other reprimand and was allowed to continue to work remotely until he retired several years later. The two supervisors who sought authorization for the arrangement under false pretenses were not terminated but prohibited from applying for any promotion for 12 and 18 months, respectively. This "sanction" occurred during the COVID-19 pandemic when defendants were under a hiring and promotion freeze. The two supervisors remain employed by defendants.

59. Based on the foregoing, defendants terminated plaintiff's employment not because of any unauthorized remote work arrangements or "insubordination" towards a supervisor, but because they chose to discriminate against plaintiff for seeking such an accommodation due to his disability, and retaliated against him when he objected to attempts to deny or limit that accommodation.

60. By letter dated December 29, 2022, plaintiff, through counsel, advised defendants of plaintiff's claims arising out of the termination of his employment. Defendants did not respond to plaintiff's demand.

## AS AND FOR A FIRST C LAIM

61. Plaintiff repeats and re-alleges the allegations set forth at paragraphs "1" through "60" as if fully set forth herein.

62. Plaintiff requested a reasonable accommodation from defendant that did not cause undue hardship.

63. Defendant has discriminated against plaintiff because of his disability by:

a. Delaying approval of his request for an accommodation and requiring renewal on short term intervals despite his disability being permanent.

    b. Discouraging plaintiff's treating physicians from recommending a reasonable accommodation or treating plaintiff at all.

c. Adding conditions and qualifications unrelated to job or financial needs to plaintiff's accommodation by his supervisors that were not part of the interactive process with defendants' medical office and not taken out of job necessity.

d. Allowing other individuals in plaintiffs' unit <<Term>> to work remotely and out of state even without a need for accommodation, while imposing the aforementioned conditions and qualifications on plaintiff.

e. Threatening plaintiff with termination and ultimately terminating plaintiff's employment when plaintiff requested that defendants respect and adhere to the accommodation he had received.

64. Defendants, by the foregoing conduct, have discriminated against plaintiff because of his disability in violation of 42 U.S.C.S. §12112.

65. Defendants, by the foregoing conduct, have both retaliated against plaintiff and coerced, threatened, interfered, and intimidated plaintiff in the exercise of his rights under the ADA in violation of 42 U.S.C.S. §12203.

**AS AND FOR A SECOND CLAIM**

66. Plaintiff repeats and re-alleges the allegations set forth at paragraphs "1" through "65" as if fully set forth herein.

67. Defendants, by the foregoing conduct, discriminated against plaintiff because of his disability in violation of the Rehabilitation Act, 29 U.S.C. §791.

68. Defendants, by the foregoing conduct, have both retaliated against plaintiff and coerced, threatened, interfered, and intimidated plaintiff in the exercise of his rights under the Rehabilitation Act in violation of, 29 U.S.C. §791.

**AS AND FOR A THIRD CLAIM**

69. Plaintiff repeats and re-alleges the allegations in paragraphs "1" though "68" of the Complaint as if set forth fully herein.

70. Defendants, by the foregoing conduct, discriminated against plaintiff because of his disability in violation of the New York State Human Rights Law in violation of NY Executive Law §296.

71. Defendants, by the foregoing conduct, retaliated against plaintiff for the exercise of his rights in violation of the New York State Human Rights Law in violation of NY Executive Law §296.

**AS AND FOR A FOURTH CLAIM**

72. Plaintiff repeats and re-alleges the allegations in paragraphs "1" though "71" of the Complaint as if set forth fully herein.

73. Defendants, by the foregoing conduct, discriminated against plaintiff because of his disability in violation of the New York City Human Rights Law in violation of NYC Admin. Code §8-107.

74. Defendants, by the foregoing conduct, retaliated against plaintiff for the exercise of his rights in violation of the New York City Human Rights Law in violation of NYC Admin. Code §8-107

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully asks that this Court enter a judgment:

a) Declaring that defendant is in violation of the Americans With Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b) Enjoining defendant from engaging in any further violations of the Americans With Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law;

c) Awarding plaintiff all lost wages and benefits pursuant to the Americans With Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law;

d) Awarding plaintiffs compensatory damages pursuant to the Americans With Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law;

e) Awarding plaintiff reinstatement and other equitable relief, including but not limited to front pay pursuant to the Americans With Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law;

f) Awarding plaintiffs costs and reasonable attorneys' fees in this action pursuant to the Americans With Disabilities Act, the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law;

g) Granting such other and further relief as this Court deems necessary and proper.

Dated: New York, New York
November 28, 2024

Respectfully submitted,
GILES LAW FIRM LLC
Attorneys for Plaintiffs
*Joshua Parkhurst*

Joshua Parkhurst
85 Broad Street, 17th Floor
New York, NY 10004
(201) 577-2644
jparkhurst@gileslawfirmllc.com

**JURY DEMAND**

Plaintiff hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury in the above captioned action.