UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTHEW FERRARA,

Plaintiff,

-v-

METROPOLITAN TRANSPORTATION
AUTHORITY and LONG ISLAND
RAILROAD,

Defendants.

24-CV-9161 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Matthew Ferrara brings claims of discrimination, retaliation, and interference

under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*,

Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 290, *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C.

Admin Code § 8-101, *et seq.*, against Defendants Metropolitan Transportation Authority and

Long Island Railroad. Now before the Court is Defendants' motion to dismiss Ferrara's First

Amended Complaint (the "Amended Complaint"). (ECF No. 21.) For the reasons that follow,

the Court grants Defendants' motion as to Ferrara's federal claims and dismisses Ferrara's state

claims without prejudice to refiling in state court.

## I.    Background

### A.    Factual Background

The following facts are taken from Ferrara's First Amended Complaint and are presumed

true for the purposes of this motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d

Cir. 2013).

1

From June 2004 until his termination on October 14, 2022, Ferrara worked in the Maintenance of Equipment Division of the Long Island Railroad (the "LIRR"). (ECF No. 19 ("FAC") ¶ 13.) Because of the COVID-19 pandemic, Ferrara had been working remotely since March 2020. (*Id.* ¶ 18.) Ferrara has suffered from gastroesophageal reflux disease ("GERD"), commonly known as acid reflux, since 1996. (*Id.* ¶ 14.) Ferrara was first prescribed medication for his GERD around 2011, which he disclosed to Defendants' medical office. (*Id.* ¶ 21.) In 2021, to address the growing severity of Ferrara's GERD symptoms, Ferrara's doctor prescribed a new medication regime, which caused Ferrara to experience various side effects, including dry mouth, drowsiness, blurred vision, and imbalance. (*Id.* ¶¶ 19-20.) Ferrara spoke with his supervisor Mike Gilson and department head Craig Daly about these side effects; Daly advised Ferrara to seek a reasonable accommodation, but Gilson objected, calling remote work a "cop out." (*Id.* ¶ 24 (quotation marks omitted).)

Ferrara applied for a reasonable accommodation on July 8, 2021, which was granted on August 11, 2021. (*Id.* ¶ 25, 26.) The letter approving Ferrara's reasonable accommodation, from Christopher Yodice of Defendants' Health Services Department, read:

> As a requirement of this accommodation, you must continue to be in contact with your department head or designee and follow any conditions specified by your department at the start of your telework assignment; you must also follow any conditions specified subsequently. In addition, you are expected to telework from your home address (noted above) [52 Flintridge Drive, Holbrook, NY 11741] and must be prepared to report to any work location determined by your manager at any time at his/her discretion upon being given 24-hour notice.

(ECF No. 22 at 5; ECF No. 22-1 at 4.)[1] Gilson continued to express hostility toward remote work, including by expecting Ferrara to be physically present at work, calling remote work a

---

[1] Defendants appended several exhibits to their motion to dismiss. (*See* ECF No. 22-1.) Ferrara does not explicitly incorporate Exhibits A, B, C, D, or F—which contain Ferrara's reasonable

"cop out," and opining that if someone worked remotely, their job was not necessary.  (FAC ¶ 27.)  Due to this hostility, Ferrara requested and was assigned a new supervisor, Eileen Rodriguez, in November 2021.  (*Id.* ¶¶ 28, 34.)

Ferrara renewed his request for reasonable accommodation in September 2021.  In response, Yodice advised Ferrara that his accommodation had been renewed, but that it included a requirement that he work in-person once a week.  (*Id.* ¶ 29.)  After Ferrara emailed Daly objecting to this modification, however, Yodice informed Ferrara that his original accommodation of full-time remote work would remain in effect.  (*Id.* ¶ 32.)  In November 2021, Ferrara received a letter approving his second renewal of his accommodation request that contained the same in-person work requirement, but Yodice again assured Ferrara that this was just a "cut and paste" of the prior letter, and that Ferrara was not required to work in-person.  (*Id.* ¶ 37; ECF No. 22-1 at 6.)  The approval letter otherwise contained the same requirements, including that Ferrara work from his New York address, as the letter Ferrara received on August 11, 2021.  (ECF No. 22-1 at 6.)  Verbally, however, Yodice confirmed that Defendants had Ferrara's Florida address on file as his residential address.  (FAC ¶ 38.)

---

accommodation and his exchanges with his later-assigned supervisor—in his Amended Complaint, but he clearly "has knowledge or possession of" these documents and "relied on [them] in framing the complaint."  *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).  Moreover, the terms of these documents go to the crux of whether Defendants' actions constituted unlawful discrimination or retaliation.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006))).  Ferrara contends that these exhibits do not accurately reflect the actual conditions of his accommodation, his address at the time, or the scope of his supervisor's authority.  (ECF No. 27 at 18.)  But those assertions go to the merits of his arguments, rather than to the accuracy or authenticity of the documents.  Accordingly, this Court considers these exhibits in deciding this motion to dismiss.  It does not consider any of the other exhibits attached by Defendants, which were not referenced in Ferrara's Amended Complaint.

Between January and May 2022, Ferrara worked remotely from his residence in Florida. (*Id.* ¶ 39.)  In the spring of 2022, Ferrara's new supervisor, Rodriguez, informed Ferrara that she was visiting Florida for vacation and discussed visiting his residence there.  (*Id.* ¶ 44.)  However, in May 2022, Rodriguez sent Ferrara a letter in May 2022 directing him to "move back to the New York area to continue your employment with the Long Island Railroad."  (*Id.* ¶ 40; ECF No. 22-1 at 8.)  The letter stated that Ferrara had "advised [Rodriguez] that [he] currently maintain[ed] a home on Long Island" and gave Ferrara two weeks to return to the New York area or face termination.  (ECF No. 22-1 at 8.)  Ferrara returned to New York and met with Rodriguez and a human resources representative, where he was told that Defendants would be publishing a telework policy soon, at which point they would address Ferrara's telework questions.  (FAC ¶ 41.)

The LIRR published its telework policy in July 2022, which stated that any restrictions on telework laid out therein did not apply to workers teleworking due to an accommodation of a disability.  (*Id.* ¶ 42.)  Based in part on the telework policy, Ferrara continued to work remotely from Florida.  (*Id.* ¶ 43.)  In August 2022, Defendants removed Ferrara's name plate from his office.  (*Id.* ¶ 59.)  In September 2022, after Ferrara informed Rodriguez that he was no longer residing in New York, Rodriguez told Ferrara that he was required to work from his New York residence.  (*Id.* ¶¶ 48-49.)  Ferrara asserted in reply that this requirement constituted harassment due to his disability and requests for reasonable accommodation.  (*Id.* ¶ 50.)  Subsequently, Ferrara received an email shortly followed by a letter on September 15, 2022, in which Rodriguez stated that Ferrara had "been insubordinate" because his "actions violate[d] [her] reasonable written directive."  (ECF No. 22-1 at 13.)  The letter "present[ed] an opportunity for [Ferrara] to remedy that insubordination without disciplinary consequences" by working

4

remotely "from a location within commuting distance of [his] workplace" and informing his

employer of that "commutable address." (*Id.* at 13-14.)

Ferrara subsequently discovered that, also around this time, Defendants' medical office

contacted his treating physician and "repeatedly asked if the physician was competent or able to

treat plaintiff when plaintiff lived in Florida." (FAC ¶ 58.) Ferrara also alleges that an

administrative assistant to Ferrara's superiors pressed one of his colleagues to say that he was

experiencing "difficulty getting support and direction . . . from [Ferrara] based on his remote

working arrangement." (*Id.* ¶ 47.) A few days later, Ferrara spoke with Yodice at the Health

Services Department, who confirmed that his accommodation request was in effect until the end

of that year, and that they had Ferrara's Florida address on file. (*Id.* ¶ 52.) On October 14, 2022,

however, upon his return from medical leave, Ferrara's employment was terminated for

"insubordinate behavior towards Eileen Rodriguez." (*Id.* ¶¶ 53, 55 (quotation marks omitted).)

### B.    Procedural Background

Ferrara sued Defendants on November 30, 2024. (ECF No. 1.) On February 17, 2025,

Defendants moved to dismiss the original complaint, after which time Ferrara filed his First

Amended Complaint. (ECF Nos. 14, 19.) Defendants then moved to dismiss the First Amended

Complaint on March 31, 2025 (ECF No. 21) and filed a corresponding memorandum of law in

support (ECF No. 22). Ferrara opposed the motion to dismiss (ECF No. 27), and Defendants

filed a reply in further support of dismissal (ECF No. 30).

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he

Supreme Court has established the following order to be followed in determining whether the pleading is adequate:  'When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  In conducting this analysis, courts must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."  *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009).  However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

## III.     Discussion

### A.     Disability Discrimination Under the ADA and Rehabilitation Act

#### 1.     Legal Standard

"Claims under the ADA [and] the Rehabilitation Act . . . all proceed under the familiar burden-shifting analysis articulated by *McDonell Douglas* and its progeny."  *Doe v. Bd. of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 F. App'x 46, 48 (2d Cir. 2003) (summary order).  Under this framework, the plaintiff bears the initial burden of showing, by a preponderance of the evidence, a *prima facie* case of discrimination, by establishing "(a) that his employer is subject to the ADA [or Rehabilitation Act]; (b) that he is disabled within the meaning of the ADA [or Rehabilitation Act] or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability."  *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008); *see also Bd. of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 F. at 48 (applying same to Rehabilitation Act).

6

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quotation marks omitted); *Imhof v. New York City Hous. Auth.*, No. 23-CV-1880, 2024 WL 3376084, at *9 (S.D.N.Y. July 11, 2024) ("The ADA's standard for adverse employment action mirrors that of Title VII."). Examples of such actions "include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quotation marks and citations omitted). The causation standard that governs whether a plaintiff experienced an adverse employment action "because of" his disability is the same under the ADA and Rehabilitation Act. *See Natofsky v. City of New York*, 921 F.3d 337, 345 (2d Cir. 2019). It requires that, "'but for' the disability, the adverse action would not have been taken." *Id.* at 347. At the pleading stage, Ferrara "need only give plausible support to a minimal inference of discriminatory motivation" underlying the alleged adverse employment action. *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (quoting *Vega*, 801 F.3d at 84).

Alternatively, a plaintiff may "raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Kosack v. Entergy Enters., Inc.*, No. 14-CV-9605, 2019 WL 330870, at *6 (S.D.N.Y. Jan. 25, 2019) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). To be similarly situated in "all material respects," the plaintiff must "show that similarly situated employees who went undisciplined engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40

(2d Cir. 2000); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

### 2. Discussion

Ferrara claims that he was terminated "not because of any unauthorized remote work arrangements or 'insubordination' towards a supervisor, but because [Defendants] chose to discriminate against [P]laintiff for seeking [] an accommodation due to his disability." (FAC ¶ 66.) As evidence of this, Ferrara alleges that Defendants forced him to renew his request for accommodation five times over the course of eleven months (FAC ¶ 26), aggressively questioned his physician's ability to treat him (*id.* ¶ 58), pressed one of his colleagues about Ferrara's remote work performance (*id.* ¶ 47), and eventually terminated Ferrara (*id.* ¶ 71). Ferrara also alleges that Rodriguez knew about his Florida residence since at least the spring of 2022 (*id.* ¶ 44), that Defendants could not explain why their telework policy did not allow Ferrara to work from Florida (*id.* ¶ 40), and that Defendants removed his name plate from his office as early as August 2022, all of which Ferrara contends is further proof that the reason given for his termination was pretextual. (ECF No. 27 at 15.)

Of these allegations, only Ferrara's termination qualifies as an "adverse employment action." *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) ("An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities[.]" (quotation marks omitted)). The question is therefore whether Ferrara has

alleged facts that give rise to "a minimal inference of discriminatory motivation" underlying his termination. *Dooley*, 636 F. App'x at 21 (quotation marks omitted).[2]

He has not. Ferrara points to no statements, communications, or actions by Defendants that negatively reference Ferrara's disability or his request for accommodation.[3] And while Ferrara's allegations depict a workplace that is arguably plagued by some level of bureaucratic dysfunction, the evidence Ferrara has adduced does not raise an inference of discriminatory intent. The fact that Ferrara was required to renew his request for accommodation several times, for example, does not evince discriminatory animus where Ferrara's symptoms were variable and where Ferrara makes no claim that his required renewals were more frequent than other similarly situated employees. Defendants' interrogation of Ferrara's colleague about his remote work performance, without more, does not suggest that Defendants intended to fire Ferrara because of his disability. And although Defendants may have been abrasive in their attempts to verify that Ferrara remained entitled to a reasonable accommodation, their confrontational colloquies with Ferrara's physician fall short of demonstrating that they harbored discriminatory animus towards Ferrara's disability in particular. The same is true of his remaining allegations.

Meanwhile, the written exchanges between Ferrara and his supervisor present a clear record of the impetus behind Ferrara's termination: his repeated non-compliance with the requirement that he telework from his address in New York. This requirement was present in

---

[2] No party disputes that Defendants are subject to the ADA and Rehabilitation Act, that Ferrara is disabled, or that Ferrara is otherwise qualified to perform the essential functions of the job.

[3] Ferrara alleges that Gilson expressed hostility to his remote work accommodation and attempted to limit it. (FAC ¶¶ 24, 27, 30.) But Gilson's modifications to Ferrara's accommodation never took effect. Moreover, because Gilson no longer had supervisory power over Ferrara after November 2021 and made the relevant comments in a context unrelated to Ferrara's termination, and because Ferrara makes no allegation that Gilson oversaw or influenced Rodriguez in the termination decision, they are at most "non-actionable stray remarks." *Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016).

each of Defendants' letters approving Ferrara's requests for accommodation.  (*See, e.g.*, ECF No. 22-1 at 4, 6.)  When Ferrara informed Rodriguez that he was no longer residing in New York, she promptly instructed Ferrara to return to New York three times before terminating him for "insubordination."  (*Id.* at 8, 13; FAC ¶¶ 49, 51, 55, 59.)  On this record, Ferrara does not "set forth any factual circumstances from which a disability-based motivation for [his termination] might be inferred."  *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order) (brackets omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)); *cf. Natofsky*, 921 F.3d at 351 (stating that the plaintiff did not show that, but for his disability, he would not have been demoted, since "[t]here was ample evidence that [his superiors] had reason to . . . think that [his] performance was deficient and demoted him on that basis").

In the alternative, Ferrara presses a disparate treatment claim.  He contends that "Defendants have allowed several workers, including in the Maintenance of Equipment Division, in office roles to work remotely," including the MTA's Chief Operating Officer, Chief Transformation Officer, a Managing Engineer in the Maintenance of Equipment Division, and a Senior Manager for Reliability Centered Maintenance.  (FAC ¶¶ 60-65.)  But Ferrara does not offer facts to demonstrate that he is "similarly situated in all material respects" to these individuals.  *Kosack*, 2019 WL 330870, at *6 (quotation marks omitted).  He does not specify what the responsibilities of the other employees were, when the remote work took place, for how long, and whether they had sought authorization for it.  Nor does he indicate which individuals worked remotely to accommodate a disability, rather than out of personal preference.  The dearth of detail in Ferrara's complaint as to the circumstances and conditions under which the proffered comparators worked remotely precludes this Court from assessing whether they were indeed similarly situated to Ferrara in all material respects.

Accordingly, Ferrara's claims of disability discrimination under the ADA and Rehabilitation Act are dismissed for failure to state a claim.

### B.    Interference Under the ADA[4]

#### 1.    Legal Standard

The ADA makes it unlawful for an employer "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter."  42 U.S.C. § 12203(b).  "Neither the Supreme Court nor the Second Circuit has yet outlined a legal test for an interference claim under the ADA," *E.E.O.C. v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 204 (D. Conn. 2017), but some courts have turned to interpretations of a similar provision in the National Labor Relations Act ("NLRA") for guidance, *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *12 (E.D.N.Y. June 19, 2020).  The Second Circuit has held that conduct violates the anti-interference provision of the NLRA "if, under all the existing circumstances, the conduct has a reasonable tendency to coerce or intimidate employees, regardless of whether they are actually coerced."  *New York Univ. Med. Ctr. v. N.L.R.B.*, 156 F.3d 405, 410 (2d Cir. 1998).

#### 2.    Discussion

Ferrara contends that Defendants sought to undermine his entitlement to reasonable accommodation by (1) urging his colleague to say that Ferrara's remote work arrangement was impeding his performance and (2) contacting Ferrara's physician to question their ability to treat Ferrara from a different state.  (FAC ¶ 47, 57-58.)  Despite this alleged backchanneling,

---

[4] Ferrara's Amended Complaint also purports to bring an interference claim under the Rehabilitation Act.  (FAC ¶ 76.)  But Ferrara's briefing discusses his interference claim only in the context of the ADA (*see* ECF No. 27 at 26-28), and it is unclear as a legal matter whether the Rehabilitation Act can in fact give rise to an interference claim.  Accordingly, this Court limits its analysis of Ferrara's interference claim to the ADA.

however, Defendants ultimately granted all of Ferrara's requests for reasonable accommodation; Ferrara does not contend otherwise. *See Robles*, 2020 WL 3403191, at *13 ("[T]he Hospital granted Robles's request [for leave], and therefore did not 'coerce, intimidate, [or] threaten' him on account of his having exercised that right, nor did it 'interfere with' his exercise of that right." (quoting 42 U.S.C. § 12203(b))); *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2021 WL 229672, at *12 (S.D.N.Y. Jan. 22, 2021) (concluding that the fact that the plaintiff was granted his requested leave "belies a claim that the [defendant] 'interfered' with Plaintiff's FMLA rights"). Moreover, none of these alleged interactions were directed at Ferrara himself: Ferrara did not learn of Defendants' contact with his doctors until after he was terminated (FAC ¶ 57), and Defendants' decision to ask a colleague about Ferrara's remote performance, outside of Ferrara's presence, does not appear to be the type of conduct that would have "a reasonable tendency to coerce or intimidate" Ferrara from exercising his rights. *New York Univ. Med. Ctr.*, 156 F.3d at 410.

For these reasons, Ferrara's claim of interference under the ADA is dismissed for failure to state a claim.

### C.    Retaliation Under the ADA and Rehabilitation Act

#### 1.    Legal Standard

To state a claim under the ADA and Rehabilitation Act, a plaintiff must demonstrate that: "(i) [he] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (quotation marks omitted). "Making a good faith request for an accommodation is a protected activity." *Norman v. NYU Langone Health Sys.*, 492 F. Supp.

3d 154, 166 (S.D.N.Y. 2020), *aff'd*, No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021). "Protected activity" can also include "action taken to protest or oppose statutorily prohibited discrimination." *Natofsky*, 921 F.3d at 354 (quotation marks omitted).

"A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* at 353 (quotation marks omitted). A plaintiff claiming retaliation must prove that his protected activity was a "but-for cause" of the adverse employment action. *Ninying v. N.Y.C. Fire Dep't*, 807 Fed. Appx. 112, 115 (2d Cir. 2020) (summary order); *Bailey v. Mount Vernon City Sch. Dist.*, No. 17-CV-9973, 2020 WL 1528481, at *12 (S.D.N.Y. Mar. 30, 2020) (explaining that "recent Second Circuit decisions . . . conclusively establish[ ] that 'but-for' causation is required for each of Plaintiff's claims," including retaliation).

### 2.      Discussion

Ferrara argues that Defendants "retaliated against him when he objected to attempts to deny or limit [his] accommodation." (FAC ¶ 66.) But Ferrara's allegations fail to show a causal connection between his objections to the requirement that he work remotely from New York and his eventual termination. He alleges no specific facts plausibly showing retaliatory animus. And although Ferrara alleges that Defendants took targeted actions against him—for example, by contacting his physician and canvassing his colleague about his remote performance—these allegations also fail to raise an inference of retaliatory animus. Indeed, Ferrara first accused Defendants of disability-based harassment *after* Rodriguez had already twice instructed him to return to his New York residence or risk losing his job. (*Id.* ¶ 50.) This sequence of events

13

belies the claim that Ferrara's objections were the but-for cause of his termination. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Ferrara also contends that his termination constituted retaliation for his attempts to seek "accommodation due to his disability." (FAC ¶ 66.) But Ferrara's termination took place over a year after he was first granted an accommodation. *See Harrison v. U.S. Postal Serv.*, 450 F. App'x 38, 41 (2d Cir. 2011) (summary order) (concluding a period of "several months" between when a plaintiff engaged in a protected activity and when he suffered an adverse employment action was too long, as a matter of law, to support the inference of a causal connection). In the interim, Defendants granted all five of Ferrara's requests for accommodation. Moreover, the record demonstrates that intervening events related to Ferrara's repeated non-compliance with Rodriguez's directives, rather than his requests for accommodation, were the but-for cause of his termination.

For these reasons, Ferrara fails to state a claim for retaliation under the ADA and Rehabilitation Act.

## IV.    State Law Claims

Because this Court has dismissed Ferrara's federal claims, it must now decide whether to exercise supplemental jurisdiction over Ferrara's state claims. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although this is not "a mandatory rule to be applied inflexibly in all cases, . . . in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under

the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56, 61 (2d Cir.1998) (per curiam) (concluding that district courts should decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed).

The Court sees no reason to depart from this principle.  Accordingly, Ferrara's NYCHRL and NYSHRL claims are dismissed without prejudice to refiling in state court.

## V.      Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Ferrara's federal claims, and those claims are dismissed with prejudice.  Ferrara's state law claims are dismissed without prejudice to refiling in state court.

The Clerk of Court is directed to terminate all open motions, enter judgment of dismissal, and close the case.

SO ORDERED.

Dated: February 9, 2026
New York, New York

_____
J. PAUL OETKEN
United States District Judge

15